Today is United States v. McMillian. Ms. Lyston? Correct, Your Honor. I get it right? Absolutely perfect. Good to have you here. Thank you, sir. You're with the Public Defender's Office? I am, sir. In Raleigh? Yes, sir. Together with my colleague, Steve Gordon, in the office. Yes. May it please the Court, my name is Jenny Lyston. Here on behalf of the appellant, Mr. Terry McMillian. At issue here today, Your Honor, is whether the North Carolina offense of assault by strangulation categorically qualifies as a crime of violence under Section 4B.1.2 of the Sentencing Guidelines. We contend that it does not, and that the District Court therefore committed plain error in classifying Mr. McMillian's supervised release violation as a Grade A violation. Your Honor, it is undisputed that to qualify as a crime of violence, the offense in question must be intentional. A mens rea of recklessness or culpable negligence does not suffice to qualify as a crime of violence. And to determine whether the offense is intentional for purposes of a crime of violence definition, this Court employs the categorical approach and looks at the offense only by its elements. And under the categorical approach, if the offense, by its elements, does not require that the offense be committed intentionally, then the offense is overbroad and the offense does not qualify as a crime of violence. Assault by strangulation, as codified under NCGEN Stat 14-32b, 4B, has only two elements, and these are assault and two, infliction of injury by strangulation. And on its face, Section 14-32b, 4, has no mens rea element. And this is because, unlike so many other states, North Carolina does not assign differing levels of culpability based on differing levels of intent. So in other words, assault statutes in North Carolina don't differentiate between a reckless assault or a negligent assault, between an intentional assault. It's going to be a class-H felony no matter how you commit that assault. And so the statute itself is silent and doesn't have a mens rea element. Instead, we look to the common law of North Carolina. And when we do that, as this Court recognized in Vinson, there are only three forms of the element of assault, and the Court recognized those as attempted battery, completed battery, and show of violence. And as this Court recognized in Vinson, all three of those can be committed through culpable negligence. And because of this, in Vinson, this Court held that the North Carolina offense of assault on a female did not categorically qualify as a crime of domestic violence because it did not require the intentional application of violent force. And the same is true by strangulation. I would just note that in Vinson, this Court did not rely on a single North Carolina case that specifically held assault on a female can be committed with culpable negligence. It just looked at the common law and that basic element of assault. And so here, the government is saying, well, we've looked at all of these cases for assault by strangulation. We can't find a single case that says that you specifically, that you can commit assault by strangulation through culpable negligence. But of course, there is no case that says that you cannot. And so quite frankly, we just, we don't have, it's an unresolved issue. We don't have a North Carolina case directly on point. And so under these circumstances, what this Court has to do is look at North Carolina law and decide the issue because of course, North Carolina does not certify federal questions. And so when we look at North Carolina law and we examine it, here's what we know. We know that the mens rea is supplied through the common law. And we also know that North Carolina has specifically held, the North Carolina courts have specifically held that there are many, many, much more serious assaults in North Carolina that can be committed through culpable negligence. To name but a few, assault with a deadly weapon, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon with intent to kill inflicting serious injury, assault with a deadly weapon on a government official, felonious child abuse, which is defined as intentionally inflicting any serious bodily harm upon a child or by intentionally committing an assault upon a child which results in serious bodily injury. All of these, manslaughter as well. All of these can be committed in North Carolina through culpable negligence. And that's all part of State v. Jones, which this court relied upon in Vinson. And of course, the less serious assaults can also be committed through culpable negligence. Basic assault, assault on a female, as this court recognized in Vinson. I'm sorry, are you arguing to us that you can strangle someone negligently? Absolutely. So, Your Honor, so strangulation is defined by the North Carolina courts as a form of asphyxia characterized by closure of the blood vessels and or air passages of the neck brought about by hanging, ligature, or the manual assertion of pressure. So by its very definition. Are you calling to mind sort of these, it's kind of early in the morning to be thinking about erotica, I guess. Is that where you're taking us? That is one example, Your Honor, that I have thought of. So in a case of erotic asphyxiation, you would have two consenting adults. You would have a manual application of pressure. But would anybody actually call that strangulation? I think it fits absolutely the definition of the North Carolina courts for strangulation. But you know, whenever you're talking about the neck. What were the three alternatives? Hanging? Ligature or the manual assertion of pressure. And it just requires the closure of the blood vessels and the air passages of the neck. That's exactly what you do in erotic asphyxiation. But, of course, you're not intending through that practice to assault anyone or inflict injury. However, it's also a highly risky and dangerous practice. We know that lots of people accidentally kill themselves doing this all the time. So in North Carolina, if somebody... How do we know all that? Is that in this record? No, Your Honor, you're welcome to look at the case law across the country. You will see dozens and dozens of insurance cases on erotic asphyxiation in which people have accidentally killed themselves. We know that it's in the news all the time where people accidentally kill themselves. Is that not in this record? You don't have it in this record anywhere. No, but, Your Honor, Judge Davis raised the issue. Judge Davis asked for some examples. Oh, I know he did, but you said it happens all the time and thousands of people or lots of people kill themselves. That's true. I would ask you to take judicial notice. This is all very interesting, but why do we even need to worry about what North Carolina suggests is the mens rea for this offense when we can... Why can't we simply look to the facts and circumstances of this offense for purposes of classification? This is not the typical scenario in which we apply the categorical or modified categorical approach, right? Actually, no, Your Honor, because I agree that this is not the typical situation. However, for classification purposes under 7B1.1, the Sentencing Commission has expressly defined crime of violence for purposes of Class A designation. It specifically refers to the 4B1.2 definition of crime of violence. Doesn't 7B1.1 talk about an inquiry about the defendant's conduct? Absolutely, and the court can look at that. But for purpose of classifying the conduct for Grade A, it refers back to crime of violence definition 4B1.2. And the Sentencing Commission, 4B1.2 has always been subject to the... It's always been subject to the categorical approach. And the Sentencing Commission understands very well how to write the definitions if it didn't want the trial court to classify... If the Sentencing Commission wanted to change that definition, for example, I know that they, under the illegal reentry documents, they have the crime of violence definition. They have completely taken that out, and under the new revised guidelines, they're changing it to more of a conduct-based inquiry. So the district court could absolutely look at the conduct and say, this was terrible conduct, but for purposes... And given appropriate sentence, but for purposes of classifying that as a Grade A classification, you do use the 4B1.2 definition. Isn't assault, by definition, a non-consensual... Yes, Your Honor, so in the erotic asphyxiation example, obviously... So you could never have, I won't say never, but you could never have a negligently inflicted assault by strangulation. Because if there's consent, it's not an assault, regardless of the definition of strangulation. Well, obviously, at some point during that encounter that started out consensually, an assault would have to occur. Let me give you another example. Why do you say that? Why do you say that? Because you're right. At some point, there would be an injury inflicted, and then it would turn into... But assault doesn't even require an injury. Assault by strangulation does require an injury. It has to inflict injury by strangulation. You see, my problem is when you put those two separate strands of criminal doctrine together, I'm having a difficult time seeing how that's not the use, the intentional use of physical force against the person of another. Let me give you another example that we're seeing a lot in the news, would be excessive force cases by police officers who, in an attempt to arrest an individual, to put an individual in a chokehold. There's no consent there. Exactly. I'm sorry. Okay. Another example of what would you give? This is another example of how you could commit an assault by strangulation in a negligent manner, in an accidental manner, would be a police officer takes a guy in a chokehold, perhaps not allowed to do that under police policy, such as in the Eric Garner case up in New York. He's not trying to inflict violent force. He's not trying to inflict injury. But because, again, the neck is such a vulnerable area, it's easy to slip up. It's easy to make mistakes. You accidentally go too far, as they did in the Eric Garner case, and injury results. And in North Carolina, a North Carolina jury could look at those circumstances and say, you know what, Mr. Police Officer, we agree that you didn't, you weren't trying to assault this person. However, these circumstances were so dangerous and your behavior was so risky that we think this amounts to a thoughtless disregard of the consequences and a heedless disregard, which is culpable negligence in North Carolina. And we're going to find you guilty under a theory of culpable negligence. Ms. Leisler, even if you're correct about this, the best result for your client is that it's a Class B violation as opposed to a Class A. Absolutely. And his sentence of 24 months is still within the guidelines range for that classification. Given what this record suggests, Judge Howard was not at all pleased with your client's record of misconduct over the years, why isn't this error harmless, even if there was an error? Because, Your Honor, so this court has said many times that sentencing a defendant under the wrong guideline range is- And by the way, we're talking about the sentence has to be plainly unreasonable. Absolutely. So that's an even more difficult burden to beat. So if you agree with me that there's error, then the error would be plain under Vinson, and then it would affect his substantial rights because he was incorrectly sentenced under an incorrect sentencing guideline range. And Judge Howard made absolutely no findings that would show that he would have sentenced Mr. McMillian to a sentence of 24 months no matter what. In fact, Judge Howard said that he generally follows the guidelines. And so we would ask you- Now, on remand, Judge Howard is, of course, free to reimpose a sentence of 24 months. But given the fact that we also don't even think that Judge Howard really did a very good job of explaining the sentence, we think that it is very likely, or at least possible, that Judge Howard might be inclined to give Mr. McMillian a lower sentence. He was looking at a guideline range of 30 to 37 months, but was statutorily limited to a sentence of 24 months. So he was looking at the 30 to 37. He said, I give a guideline range sentence, so he gave him the max. If it goes back and this court tells him, no, you can give 18 to 24, then at least Judge Howard will know the correct guideline range. Go back there again and tell me how it's plain error. Okay. First of all, you've got to have an error. Got to have the error. Got to have an error. So if you agree with us- Under your theory. That this is not a crime of violence, that would be the error. But that's class B. Correct. So- How's it plain? So the error would be plain. It has to drop off the page to be plain. Well, this court has said that the error need not be plain at the time that the trial court sentenced, but it need only be plain at the time of appellate consideration. And we think that the error is plain under Vinson. As soon as Vinson came out, the government- Well, but the question is plainly unreasonable. It's not plain error. It's plainly unreasonable. Well, just to be clear, Judge Davis, I'm responding to the plain error because Judge- Mr. McMillian did not assert at the time of trial that assault by strangulation was not a crime of violence. So because he didn't make that argument- So it's plain error. Right. But I think Judge Diaz's question and Judge King's follow-up is asking you to focus on plainly unreasonable under our supervised release sentencing jurisprudence. So this court has repeatedly held that sentencing a defendant under the wrong guideline range seriously affects the judicial- Just the probation revocation or supervised release revocation. Yes. And this court has also held- They have more discretion. They do, Your Honor. But sentencing a defendant under the wrong guideline range is plain error under United States- Evolved versus United States. The Supreme Court has said that that is obvious procedural error. And this court has said that sentencing a defendant in the wrong guidelines range seriously affects the fairness, integrity, and public reputation of judicial proceedings. And so that we feel that Mr. McMillian was sentenced under the wrong guideline range, and we would ask that he be remanded so that he can be sentenced under the correct guideline range. Thank you very much. Thank you. Let's see what the government has to say about this. Mr. Anderson? Good morning. And may it please the court, my name is Michael Anderson, and I represent the United States. The question before the court is whether assault inflicting physical injury by strangulation requires the intentional use of physical force against the person of another. And the answer is yes. Assault by strangulation is unique. It's narrow and specific. As the defendant noted, the strangulation that's required to commit this- Before you get to that, you can see, do you agree with Ms. Leister that we cannot focus on the actual conduct in this case, that we need to apply the categorical and modified categorical approaches? Effectively, yes, Your Honor. The court can look at the conduct to determine whether the defendant committed the offense that was charged in the motion for revocation. But when it comes to determining the class of that offense, the United States agrees that the court looks at the categorical approach. But under that categorical approach, assault by strangulation is categorically a crime of violence. It requires the intentional use of physical force against the person of another. The strangulation that's required to commit this offense can only be committed in one of three ways. North Carolina's case law makes this clear, and North Carolina's pattern jury instructions also make this clear, that the strangulation can occur only by hanging, by ligature, meaning to bind tightly with a rope or a cord, or by the manual assertion of pressure. All three require the intentional use of physical force against the person of another. There is no other way to commit this offense, particularly when the court considers that the strangulation itself is not enough. Rather, there must be constriction so severe as to not only restrict the airways and the blood vessels of the neck, but to cause a physical injury by the strangulation. So your response, I guess, to the Eric Garner hypothetical is that, in fact, whatever an officer might hope for, it amounts to the intentional application of physical force to the person of the victim. That's exactly right, Your Honor. Assault by strangulation is not a specific intent crime. The assailant does not have to intend the strangulation. As long as the assailant intends the use of physical force, which is exactly the case in a chokehold, that is not reckless. That is not negligent. It is nothing but intentional. We might describe, again, if an arrestee dies or suffers a lack of oxygen such that he or she is rendered brain dead or something, we might say that the officer behaved in a reckless way in bringing about that result. But your argument is still the application of force was very much intentional. That's exactly right, Your Honor. And it's the same for erotic asphyxiation. First of all, as Your Honor noted, erotic asphyxiation is not an assault because there is consent there. But even if we assume that at some point that consent ends, the assault is intentional. The strangulation in that hypothetical is intentional. So even the hypothetical facts can't be committed. The assault by strangulation, even in a hypothetical, cannot be committed without the intentional use of physical force against the person of another. And North Carolina's case law also makes this clear. In 12 years of prosecuting this case, not one reported case indicates that North Carolina prosecutors relied on recklessness or culpable negligence to either charge or prove this offense. So did we get it wrong in Vinson? Your Honor, the United States does not believe that Vinson was intended to disqualify all assaults in North Carolina. And that's for four reasons. And I'll briefly set out those four reasons and then return to each to elaborate further and answer any questions. First, in United States v. Smith, this court decided five months ago that another North Carolina assault, that's malicious assault by secret manner, was a crime of violence. The second reason is that reading Vinson as broadly as the defendant suggests to disqualify all assaults in North Carolina is inconsistent with precedent from the North Carolina Supreme Court. The third reason is that reading Vinson as broadly as the defendant suggests removes Vinson's, and this will answer the court's question directly, removes Vinson's holding from the narrow factual and legal basis at issue in that case and extends it well beyond the bounds of that case. And then the fourth reason is that applying Vinson as broadly as the defendant suggests would mischaracterize many assaults in North Carolina. And I want now to return to that first point, United States v. Smith. In that case, this court discussed whether malicious assault by secret manner can be a crime of violence. And the court determined that it can. And the court, in making that determination, didn't rely on the mens rea, didn't rely on the element of malicious action. It instead relied on the fact that the offense required the use of a deadly weapon and the intent to kill. That case is important for two reasons. One, it shows that Vinson did not intend to disqualify all assaults. That case was three months after Vinson. Second, it showed that Vinson's analysis, which focused only on the assault element, one element of the crime, is not the analysis. The analysis is to look at all elements of the crime. And looking at those other elements in Smith demonstrated that the crime at issue there was a crime of violence, just like they demonstrate the crime at issue here is undeniably a crime of violence. The second point is that reading Vinson as broadly as the defendant suggests would be inconsistent with precedent from the North Carolina Supreme Court. In Jones, a case cited in Vinson, the North Carolina Supreme Court explained that only certain violent felonies can be committed by culpable negligence or recklessness. Yes, the court mentioned manslaughter. Yes, the court mentioned assault with a deadly weapon with intent to kill. Yes, the court mentioned assault with a deadly weapon inflicting serious injury. But assault by strangulation is different. Assault by strangulation, as I mentioned, is narrow and specific. It can only be committed in one of three ways. Strangulation can only be committed by hanging, ligature, or the manual assertion of pressure. And there is no way, even under the defendant's hypothetical facts, to commit that offense without the intentional use of physical force against the person involved. The third point is that applying Vinson as broadly as the defendant suggests would remove it from its narrow base. Vinson did not hold that all assaults in North Carolina can be committed by culpable negligence or recklessness. Vinson held that specifically the three forms of committing misdemeanor assault on a female, the only offense at issue in Vinson, could be committed by culpable negligence or recklessness. And for that holding, Vinson relied on only three cases, Jones, Damons, and Thompson. All three of those cases involve assault with a deadly weapon inflicting serious injury, which is a unique crime in North Carolina, a crime that for a while was used to prosecute essentially very bad drunk driving. A crime that indisputably can be committed by culpable negligence or recklessness. Is there any very good drunk driving? Your Honor, my apologies. There is no very good drunk driving. But the conduct in those cases was particularly egregious. It wasn't someone simply swerving in and out of lanes. It was a drunk driver who hit somebody else. But from that narrow base, the court cannot take Vinson's holding and apply it to assault by strangulation or many other crimes in North Carolina. This brings me to my fourth point, that doing so would mischaracterize many crimes in North Carolina. North Carolina provides over 20 statutes that criminalize over 50 assault crimes, including at least five that require, by statute, malice of forethought. One of those crimes is already dealt with by this court in the United States v. Smith. It involved an element, one of the elements of that crime was an assault and malicious conduct. Another crime, elder abuse, requires, as an element, assault, but also specifies malicious conduct. There are three others that are clearly assaults. North Carolina calls them assaults. They require malicious conduct. The defendant's argument would overread Vinson and would mischaracterize all of those assaults. It would also mischaracterize assault by strangulation. It would also mischaracterize assault inflicting serious bodily injury, which the United States discussed briefly in its brief, and which the United States has also briefed in a separate case, so I don't want to get into that too much today. But for all of those reasons, rather than looking at only one element of the crime and analyzing it in a vacuum and then stopping, as the defendant suggests, the court should look at all elements of the crime, because that is the best way to effectuate the purpose of the categorical approach, which in this case is to determine whether the conduct that's encompassed by the elements of this offense requires the intentional use of physical force. And again, the answer is unequivocally yes. And I do want to talk about, briefly, those 58 cases in North Carolina that involve assault by strangulation. As I said, those cases indicate that North Carolina prosecutors are not relying on culpable negligence. They are not relying on recklessness. And those cases don't even show a fact pattern that would support a mens rea lower than actual intent. And I want to give the court one brief example, State v. Atkins. It's a 2014 case. In that case, after an argument, the defendant shoves his girlfriend into an alleyway and begins choking her with his bare hands. When the victim tries to run away, the defendant stops her, takes off his belt, and strangles her multiple times until she passes out. And as heinous as those facts are, they're not alone among those 58 cases. Almost universally, those cases show defendants who strangle their wives and their girlfriends, their neighbors, their acquaintances, even total strangers, as part of much larger, very violent, clearly intentional conduct. These cases show what North Carolina prosecutors think about assault by strangulation. They show the type of conduct that North Carolina prosecutors target with this offense. That conduct is not culpably negligent. It is not reckless. It is undeniably intentional, and it is undeniably violent. The defendant has not been able to show a single case demonstrating to the contrary, and that's an important consideration for this court to take into account under McNeil. And it shows that there is no realistic probability that North Carolina would apply this statute to conduct that is not a crime of violence. But even if the court disagrees with the United States' analysis on the categorical approach, the modified categorical approach can apply here. The different levels of intent are sub-elements of mens rea, but they are elements nonetheless. They are a limited, exclusive list. They are alternatives of each other, and each one constitutes a separate offense. And North Carolina's charging decisions make this clear. In Stevens and Hines, two cases cited in the government's briefs, the state, North Carolina, charged a specific level of intent. Do you mind if I interrupt and ask you to address plainly unreasonable? Whether there was an error, whether it was plainly unreasonable? It was not, Your Honor. Whether the sentence here is plainly unreasonable. Yes, Your Honor, and it was not. Clearly, if there was error, it was plain error in terms of the first couple of requirements for plain error. Right. But was the sentence here plainly unreasonable? It was not, Your Honor. Assuming that it was erroneously categorized as an A rather than a B. Even if we assume that and that the conduct should have been categorized as a B, the sentence was not plainly unreasonable. There is no reasonable probability that the court would have sentenced the defendant to something else even if it had started at a grade B violation for two reasons. First, the court explained on the record expressly that its policy is to generally sentence defendants within their guideline range. A grade B violation coupled with the defendant's criminal history category of 5 would have yielded a guideline range of 18 to 24 months. The sentence that the defendant got still fell within that guideline range. And second, the court handed down that sentence after analyzing the policy statements in Chapter 7 and after analyzing the 3553A factors. Within the context of the revocation hearing, the court mentioned several times the defendant's long history of violent and assaultive conduct. Mentioned the fact that the court had previously been lenient with this defendant when it sentenced him for his prior offense, for the underlying offense, which was, in fact, another assault. And mentioned repeatedly that this defendant, after barely a year after being released on supervision, had committed yet another violent assault. And those facts, they touch directly on several of the 3553A factors. The history and characteristics of this defendant, the need to protect the public from further crimes by this defendant, the need to promote respect for the law, and the need to deter criminal conduct. And having understood the background of this case, as this court stated, and having analyzed those factors and the policy statements in Chapter 7, the court sentenced the defendant to 24 months, still within the guideline range, even if the court had started with the grade B violation. For that reason, there is no plainly unreasonable sentence here. Having addressed that, unless the court has additional questions on that particular point, I would like to return to the modified categorical approach. What's the relationship between a plainly unreasonable revocation sentence and a substantively unreasonable original sentence on a criminal judgment? Is there any analytical connection? Well, I think for a revocation sentence, the explanation the court needs to make and the procedures the court needs to follow are less rigid than in an underlying sentence. Yes, the court does need to follow the policy statements in Chapter 7. The court expressly said that it did. Yes, it needs to consider the 3553A factors. The court expressly said that it did. In the context of the supervised release revocation, which is what this court looks to, this court doesn't look to whether the district court stated expressly, I went through this factor, I went through that factor, I went through the other factor. As long as in the context of the revocation hearing, it makes clear that the court did consider those factors, then that's sufficient. And the record makes that clear. Again, the court considered the long history of violent assault. If a sentence is substantively reasonable, can it be plainly unreasonable as a substantive matter? I don't believe so, Your Honor. And again, this sentence was not plainly unreasonable. It still fell within the defendant's guideline range, even if the court had started with a grade B violation. Okay, I don't want to muddle things, and I was just curious what your views were. Those would be the views of the United States, Your Honor. Returning to the modified categorical approach, in Hines and Stevens, as I was discussing, those cases indicate that North Carolina charges a specific level of intent. And then if that level of intent has not been proven at trial, it's a fatal variance. And the reliance on the fatal variance doctrine is important, because in North Carolina, for a statutory offense, generally the indictment is sufficient if it tracks the language of the statute. Any further detail, any examples, is simply surplusage that can be struck if it's not proven at trial. The fact that in Hines and Stevens, the Court of Appeals did not strike the more specific level of intent, and rather held that it was a fatal variance to instruct on a lower level than was mentioned in the indictment, indicates that the specific level of intent is an element of the crime. It is not a means, it is not simply more detail that can be struck as surplusage. It is an element of the offense that has to be charged in the indictment, and then it has to be proven at trial and found unanimously by a jury. Hines is particularly instructive on this point, because in reaching the conclusion that the Court reached in Hines, it relied on precedent from the North Carolina Supreme Court, State v. Williams. In that case, the Supreme Court explained that when the elements of one crime are charged in an indictment, and the elements of another crime are proven at trial, that it's a fatal variance and dismissal is warranted. And as State v. Jones and the North Carolina Supreme Court confirmed this understanding, in that case, the case relied on by Benson, the North Carolina Supreme Court analyzed whether assault with a deadly weapon, inflicting serious injury, could be a predicate for felony murder. North Carolina's felony murder statute says that it can, but the North Carolina Supreme Court clarified, it said that the culpable negligence version of that crime cannot be a predicate felony. And what's important is that the Court did not disqualify the entire crime of assault with a deadly weapon, inflicting serious injury. The Court disqualified only, specifically, the culpable negligence version. That indicates that North Carolina understands the different levels of intent to be individual elements of separate crimes. The crimes are divisible, and a modified categorical approach applies. And here, the District Court relied on actual intent. The motion for revocation charged that the defendant committed assault by strangulation, by holding his girlfriend on the ground and strangling her. The Court then heard evidence on that offense. The Court heard that the victim held the defendant on the ground, strangled her with his bare hands, until she nearly passed out, until she urinated on herself, until he burst a blood vessel in her eye, until he caused physical pain to her neck, for which she sought medical treatment. The Court, based on those facts, found by a preponderance that the defendant did, in fact, commit assault by strangulation. And coupled together, the motion for revocation and the Court's findings indicate that the Court relied on actual intent. So to sum up, assault by strangulation is categorically a crime of violence. It cannot, even under the defendant's hypothetical facts, it cannot be committed by anything less than actual intent, than the intentional use of physical force against the person of another. But even if the Court disagrees, the modified categorical approach applies, and the Court relied, the District Court here, relied on actual intent. But I do want to note one thing before I sit down, which is that the defendant's conduct here, the assault by strangulation, was not the only Grade A supervised release violation. The defendant also committed second-degree kidnapping. Second-degree kidnapping is a crime of violence. The defendant doesn't dispute that. The second-degree kidnapping was charged in the motion for revocation. The Court, at the beginning of the revocation hearing, stated, expressed it on the records on the first or second page of the transcript, stated that the allegations against the defendant included second-degree kidnapping. The Court then heard evidence on that offense, heard that the defendant took the victim's entire set of keys, forced the victim into her vehicle without her consent, drove her around for hours on end until the wee hours of the morning, refusing to let her get out, and in fact dared her to either call for help or run away, and then threatened to beat her to death if she did. That was more than sufficient to prove by a preponderance that the defendant committed second-degree kidnapping. The Court did, in fact, make that finding, having heard all that evidence. Well, where? Where on the record? On Joint Appendix page 88. The judge actually made a finding of liability with respect to second-degree kidnapping? The Court stated that the allegations in the motion for revocation are, in fact, true, which would necessarily include the second-degree kidnapping, and even the defendant understood the Court to have made that finding. The defendant stated, when he asked for a mitigated sentence, that he asked the Court to set aside the Court's previous findings, mentioning expressly not only assault by strangulation and larceny, but also second-degree kidnapping, and asking the Court to find instead that the defendant had committed only a simple assault and that the defendant had committed only unauthorized use of a motor vehicle. That indicates that the defendant himself thought that the Court did, in fact, make that finding, because the Court did. Unless there are further questions from the Court, there are other issues in this case, but I believe that they're adequately briefed, and I'll conclude. Thank you very much. Thank you. Ms. Lison? Yes, Your Honor. With regard to the second-degree kidnapping, the trial court made specific findings on three separate occasions, and at no point did the trial court find second-degree kidnapping. On page 89 of the JA, he says that he did find they violated the terms and conditions of the judgment of criminal conduct to include assault and probable theft of a motor vehicle. Then again on JA 91, he says, and I believe that there was an assault by strangulation, I believe there was larceny of a motor vehicle. And then again on page 95 of the JA, the Court finds as a fact that he has violated the terms, including what the Court believes is this attempt to assault by strangulation and larceny. Never mentioned second-degree kidnapping, so we do not believe that it was included among the judge's findings. This government mentioned this Court's decision in Smith. That was an unpublished decision, and this issue of intentionality was never raised, and Vincent was never discussed in that decision. So we don't think Smith has much relevance here. As far as the violent force, the government keeps saying that there is no way you can commit the strangulation without intentional use of violent force. But by definition, the strangulation in North Carolina, you only have to use a manual application assertion of pressure. That is not the same as violent force, and we contend that a police officer in the chokehold would have no intent to commit an assault. He would have no intent to use violent force. Is it intent to commit an assault or intent to apply force? It's intent to use violent force, which would possibly result in injury. There would be no intent by that police officer to intentionally commit such violent force. However, it is easy to slip up and make a mistake, and if that happened and the police officer came forward and said, no, no, this injury occurred by accident. I think when a police officer takes an arrestee to the ground, I think that officer is using violent force. Don't you think? I don't think he's intending to use violent force. That's exactly what he's intending to do. I'm having problems putting the two sides of your argument together. He's intending to use whatever force is necessary. Force is necessary. As necessary. Whatever. But if he were not intending that, if he contended that he was charged criminally with assault by strangulation, he could come forward and say, this injury was accidental, and then the jury would be instructed on, as this court indicated in Benson, on injury by accident, which includes by definition, an injury can only be accidental if it does not involve culpable negligence. It just seems to me that you're collapsing the intent to apply violent force with the intent to strangle. And I think those are two different things when it comes to assault with intent or assault by strangulation. Well, Your Honor, I don't think... I think that you could have... Well, if you go back to the erotic association. Yeah, let's go back to erotic. My mother would be so proud. I've always wanted to discuss this with the panel of three judges. There would be no intent there to inflict injury or use violent force. And there would be no assault. Unless an accident happened and you went too far, which happens all the time in these cases, in erotic associations. It's very easy to go too far and, oops, I messed up. I accidentally choked her out, inflicted bruises. And then afterwards she says, well, I didn't want that to happen. I didn't agree to that. And then there's a dispute and it's a he said, she said. And under those circumstances, he could come forward and say, look, this is my defense. I did not intend for this to happen.  And then the jury would be instructed on injury by accident, which by its definition cannot involve culpable negligence. And the jury could decide, well, we think that you weren't intending to assault her, but this is such a risky practice that we find you guilty under the theory of culpable negligence. The other things I wanted to get to, if this court is interested in the mens rea argument, the disability argument that the government is bringing up, we didn't think this court would allow us to file a serve-serve reply brief. So I would just direct this court to the briefing in the case of Shantana Thompson, which is number 154685. That discusses whether the sister offense in this statute, which is assault inflicting serious bodily injury, that addresses whether that crime is a crime of violence in North Carolina. And we have fully briefed the mens rea disability argument in that brief. So I would just urge this court, if you're interested in the issue to look at those briefs. I see my time is up. Thank you so much. Thank you very much. We appreciate it. We'll come down and brief counsel and adjourn court. This honorable court stands adjourned. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Andre M. Davis